United States District Court
Central District of Illinois
Peoria Division

Joshua Hoskins
(Plaintiff)

v.

J. Olson et al.
(Defendants)

Civil Action No. 1:15-cv01181

Judge SLD

SCANNED AT MENARD and E-mailed
9-22-15 by SG 10 pages
date     initials  No.

## Motion for leave to file a amended complaint

Now comes plaintiff Joshua Hoskins pursuant to Rule 15(15) Fed.R.Civ.P requests leave to file an amended complaint.

(1.) In plaintiff first (original complaint). When plaintiff detailed his injuries he sustained from his attack he didn't state that he sustained torn tissue inside and in the back of his eye, because at the time of the filing of his complaint and prior to the filing of plaintiff complaint he wasn't aware that he had torn tissue inside and in the back of his eye. Due to his denial of medical request to see a eye Doctor and denial of other medical treatment. Plaintiff knew that there was a serious injury to his eye but didn't know what the injuries was and how serious knew the injuries to his eye was serious because plaintiff could barely see out of his Right eye. It took plaintiff 3 1/2 months after the filing of his complaint to find out that the defendants conduct caused plaintiff to not only suffer the injuries identified in his complaint but also sustained torn tissue inside and in the back of his eye. Plaintiff was aware of that on August 26th 2015 when plaintiff was seen by a eye Doctor after making complaints about his Right eye. At his new correctional address/facility.

(2.) Plaintiff had filed a motion to Add his injury to his complaint. The court ruled on that motion on September 16th 2015. Ordering that plaintiff file a motion to amend file an amended complaint with the proposed Amended complaint attached because the court didn't allow piecemeal amendments.

(3.) What plaintiff has stated in this motion in paragraph #1 wasn't stated in the original complaint so that shows how it differs from the original complaint. It's not plaintiff fault that whats stated in paragraph #1 wasn't stated in the original complaint it took 3 1/2 months after he was transferred from a correctional institution where he was denied eye Doctor treatment and other medical treatment at and 3 1/2 in the half months after the filing of plaintiff complaint for plaintiff to find out that the defendants conduct caused plaintiff to not only suffer a laceration above his Right eye but torn tissue inside and in the back of his Right eye. Plaintiff injury stated in paragraph #1 is a part of plaintiff complaint and the defendants conducted thats stated in plaintiff Amended complaint Attached. Wherefore plaintiff respectfully requests that the court grant leave freely to Amend His /A complaint.

Date: September 18th 2015

Respectfully Submitted
Joshua Hoskins
ID# R54570
Menard Correctional Center
P.O. Box 1000
Menard, Ill 62259

United States District Court
Central District of Illinois
Peoria Division

JOSHUA HOSKINS )
(Plaintiff) )
)
)
) Civil Action No. 1:15-CV-01181
v. )
) Judge SLD
)
J. Olson et al. )
(Defendants) )
)

Complaint (Amended Complaint)

☑ 42 U.S.C. 1983 (suit against state officials for constitutional violations)
☐ 28 U.S.C. 1331 (suit against federal officials for constitutional violations)

Other

Now comes the plaintiff: Joshua Hoskins and states as follows:

My current address is: Menard Correctional Center, P.O. box 1000, Menard IL 62259

THE defendant: Jeremy Olson, is employed as: correctional officer/ internal affairs officer/investigator at: Pontiac Correctional Center, P.O. box 99, Pontiac IL 61764

THE defendant: Armando Pina, is employed as: correctional officer at: Pontiac Correctional Center, P.O. box 99, Pontiac IL 61764

THE defendant: Timonthy Lyle, is employed as: correctional officer at: Pontiac Correctional Center, P.O. box 99, Pontiac IL 61764

THE defendant: Shawn Rosenberger, is employed as: lieutenant at: Pontiac Correctional Center, P.O. box 99, Pontiac IL 61764

# Litigation History

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case? This the only suit I filed under this case and case number, this is a amended complaint from the original complaint

B. Have you brought any other lawsuits in state or federal court while incarcerated? yes

C. I never had any lawsuits dismissed as frivolous.

# EXHAUSTION OF Administrative remedies

A. Is there a grievance procedure available at your institution? Yes it was at the time of the incident stated in the complaint.

B. Have you filed a grievance concerning the facts relating to this complaint? I was barred from utilizing the grievance system and I have evidentiary support showing that I brought this issue to the Illinois Department of Corrections ("I.D.O.C.") Administrative review board (A.R.B.) prior to the filing of this complaint.

C. Is the grievance procedure completed? wasn't no grievances filed. I was barred from utilizing the grievance system, and I have evidentiary support showing that I brought this issue to the Illinois Department of Corrections ("I.D.O.C.") Administrative review board (A.R.B.) prior to the filing of this complaint.

# Statement of Claim

Place of the occurrence: Pontiac Correctional Center
Date of the occurrence: March 20th 2015
Witness to the occurrence: NONE

(1.) On March 20th 2015 during the morning shift at the Pontiac Correctional Center (I.D.O.C.) I told defendants Lyle and Pina as they did count, walking past my cell, that my cellmate had been threatening to beat me to death. Defendants Lyle and Pina observed my cellmate standing by me with his fist/hands balled up looking at me. Defendant Lyle stated to me all those grievances you wrote on (against) Major Ms. Prentice, internal affairs officer J. Attig and other staffs who I'm cool with and you think I'm gonna protect you. Defendant Pina stated it's not gonna happen. Both defendants proceeded walking doing their count. My cellmate had started hitting me in my head and face area. Defendants Lyle and Pina both had observed my cellmate assaulting me. Defendant Pina stated to my cellmate beat his (Hoskins) ass we ain't see shit. Defendant Lyle looked at me as I was trying to block the hits (punches) that was coming to me from my cellmate. Defendant Lyle told my cellmate to beat me to death that no staffs liked me and my cellmate didn't have to worry about getting a disciplinary assault charge. Defendant Lyle proceeded walking down the gallery exiting it refusing (refused) to call a 10-10 to prevent me from being attacked with assistance. My cellmate had stopped attacking me when he woke up out of his sleep and was gonna try to kill me.

(2.) When defendants Lyle and Pina served breakfast trays I reported the threat my cellmate had made to me to defendants Lyle and Pina and requested that the defendants had me removed out of the cell away from my attacker to prevent me from being attacked. Defendant Lyle stated hell no! I want to hurt your family. Defendant Lyle told my cellmate that he should have finished beating my ass. Defendant Lyle told my cellmate that I had been sending written complaints to other staffs complaining about my cellmate threats he was making to me, threats of killing me, that my cellmate should have finished assaulting me since I attempted to get him in trouble. Defendant Pina told my cellmate that I had a officer assault in my disciplinary history, had a long history of writing grievances on staffs, that staffs didn't like me, would have been glad to see and hear that I had been assaulted. And nor did I.A. (internal affairs officers) like me. My cellmate stated to me that he was gonna fuck me up (assault me) after we had ate lunch. I screamed officers I need you!!! At my cell (615 cell) my unknown name cellmate pulled out a sheet told me if I screamed again he would have strangled me to death. I complied and remained silent. My cellmate went to sleep for a few hours. I remained awake scared nervous and cried.

(3.) When defendants Lyle & Pina served the lunch trays I reported to them both what my cellmate had told me and was begging that they removed him or me out of the cell. Defendant Lyle stated hell now you coward. Defendant Pina told my cellmate that he (Pina) knew my cellmate wasn't tired of assaulting me for him to had finished assaulting me like he was doing earlier when I was balling up like a little pussie, that my cellmate didn't have to worry about getting disciplined, that staffs would have told investigators if was questioned, that they didn't see my attack occurring, that they (defendants/staffs) would have been in my cellmate best interest made it look good for my cellmate, that the internal affairs would have been on my attacker side because all the intelligence unit & internal affairs officers hated me. My cellmate started punching me in my face and head, slamming my head onto the floor causing swelling, lacerations, and contusions in my head knots (knots) as well. Swelling was in both (head & face). Defendant Pina walked past my cell again observed me on the floor after I fall onto the floor. Defendant Pina stated HA HA Hoskins write a grievance about that. I ran underneath my bunk. Numerous of minutes later when I came from underneath my bunk my

-1-

cellmate jumped off his top bunk and started to assault me in my head with his feet. I yelled somebody get me help in cell 615. Alot of other inmates started kicking & banging on their cell doors stating c/o's (correctional officers) it's a emergency in cell 615. defendants Lyle and pina responded in person they both stood outside of my cell observing my cellmate standing over me hitting me in my face and head with two closed fist. defendant Lyle stated yeah Beat Hoskins ass. defendant pina stated to me "see please I'm never write a grievance on no pontiac correctional officers no more. My cellmate got on top of me started punching me in my face then begined hitting me in my right eye with his four head. defendant Lyle stated to my cellmate yeah Buss his (Hoskins) face open, wide open cause serious abrasions bleedings, split his face open Black both of his eyes cause his injuries to be serious that would effect him forever. defendant Lyle stated fuck his eyes up so that he cannot be able to see any grievance forms anymore. defendant Lyle stated lieutenant Rosenberg hurry up and come look at Hoskins get his ass beat (assaulted). defendant Lyle stated to me I bet you wont write no more grievances on sergeant Towers, major ms. Prentice and other staffs anymore would you. defendant pina stated payback is a muthafucker aint it Hoskins.

4.) defendant lieutenant Rosenberg arrived to my cell told my cellmate (my attacker) to continue to beat my ass (assault me). defendant pina told my attacker that they was gonna tell their I.A. (internal affairs officers) buddies to report the incident as a fight to state in reports that me and my attacker both was observed in the cell bleeding that nobody witnessed the incident just to make it turn out easy for him (my cellmate/Attacker) to report the incident as a fight. defendant Lyle told my attacker we (those staffs/defendants) got you (my cellmate). defendant lieutenant Rosenberg stated to my attacker that his guy J. Olson (defendant Olson) was working internal affairs department and he (defendant Rosenberg) was gonna notify him (Olson) and make a special request for my cellmate/Attacker. defendant Lyle stated to my attacker that they wasn't gonna give him a disciplinary report (ticket) for assaulting me nor was gonna report it that they was gonna act like they didnt witness what had occurred period. but if somebody found out they would have left it up to the internal affairs and still wouldnt had (have) told the internal affairs investigaters what they observed from the start if they was interviewed. the defendants stated what they had stated while my cellmate stood and was on top of me. due to defendants Lyle, pina and Rosenberger conduct of allowing my cellmate to attack me refused to enter my cell to protect me. I had to grab my cellmate (Attacker) face and bite him to prevent him from continuing to attack me. my cellmate then stoped and grabbed a 7 to 8 inch ink pen and told my attacker (cellmate) that if he came back to see me I was gonna defend myself with the ink pen my cellmate stated he was done attacking (assaulting me). defendant Rosenberger stated to me that defendants Lyle & pina had told them (staffs) how my cellmate was up in the cell beating my ass (assaulting me). defendant Rosenberger stated he had told all officers not to report to my cell to stop my attack until my grievance writing ass against staffs was dead. defendant Rosenberger stated that he didnt like me, due to all the grievances and written complaints that I had sent to the I.D.O.C. directors and governors about staff conduct making them staffs look bad and didnt like me due to me having a staff assault violation in my disciplinary history against a I.D.O.C. officer. and those was the reasons why he allowed me to get attacked (assaulted) and didnt prevent it. (stop my attack prior and during the time). defendant Rosenberger stated that internal affairs lieutenant K. Davidson, internal affairs officers Attig, Olson and webber had told him about me. defendant Rosenberger stated and caseworker supervisor terikennedy as well. defendant Rosenberger stated to my cellmate that due to us both being injured he had to report the incident but would not had reported that my cellmate attacked me, would have contacted his Buddie defendant J. Olson who was a investigater for the internal affairs department and made sure he was the one who did the investigation and madesure he hooked the reports up good, that he my cellmate would have only received a fighting violation and not a assault. defendant Rosenberger had stated due to defendant J. Olson and other internal affairs how they disliked me. defendant Olson nor any other internal affairs officers wouldnt had a issue with doing that. defendant Lyle stated to me that if I wasnt a inmate who wrote grievances on his co-workers and supervisors, counselors, letters to the governor of I.D.O.C., Directors of I.D.O.C. about their institution staffs conduct and didnt have a staff assault in my disciplinary history against a I.D.O.C. staff officer. him and defendant pina would have did their job by entering my cell to prevent my attack before it occurred and during the time it was happening. defendant pina stated if you (Hoskins) wasnt a grievance writer against staffs nor had a officer assault in your disciplinary history. the way you was beating (beat) by your cellmate alot of staffs would have had sympathy for you because He (my cellmate) was beating the hell out of you (Hoskins). defendant pina stated but thats how we treat niggas like you, you get no assistance from us (staffs).

-2-

(5.) As a result of my attack [illegible] swelling and abrasions on both sides of my head, two deep cuts (lacerations) in the back of my head that bled constantly, a cut underneath my lip, a laceration above my right eye with torn tissue in my right eye and in the back of my right eye where fluid is going underneath the torn tissue due to how serious my attacker was hitting me in my right eye that caused the laceration above my right eye and the torn tissue inside my right eye.

(6.) I was taken to the urgent care emergency room in the Pontiac Correctional Center ("I.D.O.C.") Health Care Unit (H.C.U.) while being in the Health care unit, defendant Olson came to the Health care unit to interview me, while being interviewed by defendant Olson he stated he was aware of who I was for a while, had received and reviewed all the written complaints that I had been sending to the internal affairs department, putting them on alert about my safety issues. While being housed in the cell with my cellmate prior to my attack, I identified defendants Lyle and Pina entire conduct to internal affairs officer J. Olson (defendant Olson). After identifying those two defendants conduct to that investigator defendant Olson, defendant Olson stated he was gonna be straight up with me, that nobody from their internal affairs department liked me, that I was in bad grace with the internal affairs department and what the internal affairs department looked like disciplining officers who allowed another inmate to attack me, that if they allowed security staffs to mistreat me how they did when I was housed in the west cell house for months what made me believe the internal affairs department was gonna disciplined officers who allowed me to get attacked by another prisoner. Defendant Olson stated that my medical records was gonna state my injuries I sustained knew that I had court coming up so he was gonna take photos of my injuries to cover his ass and was only gonna take photos of the injuries he was looking at. Defendant Olson stated he wasn't writing nothing in his reports that I had told him regarding defendants Lyle and Pina conduct just to prevent those officers from being disciplined and taking to court. Defendant Olson stated most prisoners had altercations with their cellmates due to their living conditions that he was gonna make up something to put in his report that would have implicated me into having a fight with my cellmate because he wasn't gonna put in his reports that defendants Lyle and Pina allowed me to get attacked and prior to my attack I sent the internal affairs department written safety concerns including to defendant Olson putting them on alert because all of them would have been disciplined by higher investigation departments over I.D.O.C. I told defendant J. Olson that if he wasn't gonna write the truth what I had told him down in the statement I wasn't gonna sign it (the statement). Defendant Olson response was that he would had just put I was unable to sign the statement or my hand was injured. Defendant Olson stated the entire Pontiac Correctional Center (I.D.O.C.) staffs was aware that I wasn't allowed to receive grievance forms in my possession nor was I allowed to utilize the grievance system at the Pontiac Correctional Center and if any counselor slipped up and heard a grievance that I write due to defendants Lyle and Pina conduct the grievances was gonna go directly to the internal affairs unit and was gonna be found as allegations unsubstantiated, that the I.D.O.C. Administrative Review Board (A.R.B.) was gonna make the same finding as well. Defendant Olson stated that as he had discussed with correctional counselors K. Bruner, K. Sandlin, T. Baxter, J. James, T. Kennedy, warden Pfister, assistant wardens Pierce and Mutterer, superintendent M. Melvin, grievance officer S. Simpson and other staffs at the Pontiac Correctional Center (I.D.O.C.) they all had told the internal affairs department that they all was not allowing me to utilize the grievance system regarding staffs conduct that their internal affairs coordinator and officers including himself (Olson) was cool with that, that they all had told all cell house staffs to not give me grievance forms that he wasn't worried about me writing a grievance on him due to his conduct nor did officers Lyle and Pina because I wasn't allowed to utilize the grievance system at the Pontiac Correctional Center (I.D.O.C.). Defendant Olson stated he was gonna put a false disciplinary report (ticket) against me being in favor for his internal affairs lieutenant K. Davidson, his partners J. Attig, major Prentice, T. Kennedy, correctional counselor Jamie Simmons and other staffs who I wrote grievances on due to their negative conduct torse me and other written complaints that I wrote against them, that he didn't like what I stated in the written complaints that I mailed to the Administrative Review Board, investigation unit, governors, directors, Illinois state police departments, that their office had intercepted most of the letters I had addressed to those offices and would had continued to do so. Defendant Olson stated he didn't like what I stated in the complaints about his supervisor Lt. Davidson. Defendant Olson stated that their office was not gonna discipline defendants Lyle and Pina for allowing me to get assaulted nor was they gonna allow me to send letters to the governors office, directors of I.D.O.C. office, investigation units or period that they was gonna put me on mail watch and if I had mailed out any letters to those offices they would have intercepted them. Defendant Olson told me he wasn't gonna put a assault violation charge on my cellmate but had to write my cellmate a ticket (disciplinary report) on because it was proof that a physical altercation had occurred in my cell but was only gonna put a lesser offense against my cellmate because my attacker had did

- 3 -

the Internal Affairs Department of the prison couldn't be because that disliked me. defendant Olson stated to me that defendants Lyle and Pina told him how I was being assaulted begging and pleading for their help and didn't fight back that I was gonna get strangled until I bit my cellmate in the face for a defense. defendant Olson stated to me that he had Health care unit Buddies that was assigned to the health care unit and was aware how they felt about me due to what they had to him and due to what I had told them for several months when I was in the west cellhouse.

(7.) defendant Olson stated to me that he was gonna tell the health care unit medical staffs to write in the medical records/notes that I stated that I was in a fight and thats how I sustained my injuries. I told defendant Olson that he had forgot to take photos of all the injuries in my entire head he stated well he wasn't. I stated that I would have reported his conduct to my attorneys when I appeared at court on 4/14/15. defendant Olson stated if he was asked about his conduct and asked if I had sustained other injuries he would have stated I had no other injuries for him to take photos of and I sustained those injuries after the altercation. defendant Olson stated he was a very dirty crucial and smart specially when he did his reports. defendant Olson was informed by me that the medical staffs was refusing to treat all my injuries I reported the medical staffs conduct to defendant Olson his response was that he was siding with them (medical staffs) that they could have done what they wanted to do. A physician smiled. defendant Olson stated I told you you do. defendant Olson told a physician that he was exiting the Health care unit and was gonna give the physicians a call two physicians a call. A physician stated to defendant Olson that he was gonna state the same thing defendant Olson stated if he was questioned if I sustained other injuries injuries that wasn't treated. defendant Olson told a physician that he wasn't gonna talk to the physician in the opening that he was gonna give medical staffs a call. a physician stated to defendant Olson thats why I love you'll Internal affairs officers you'll have the Juice defendant Olson smiled and stated later buddy then exit out the Health care unit. two medical staffs a medical Director and a physician told another medical staff member unknown name female nurse to put in my medical records that I was involved in a fight on 3/20/15.

(8.) numerous of security staffs and prison medical staffs and other prison officials told me how defendant Olson had medical staffs to put false information in my medical records progress notes stating that my Right hand was injured to make it look like I was in a fight and took be the excuse of why I couldn't sign the false statement that defendant Olson prepared on 3/20/15. (PRIOR to Olson stating that he told me he was giving me a direct order to tell him what hand that I used to write with and if he found out I lied it was gonna be a issue. I told him I was Right-handed. Olson stated all of that during the time he stated whats stated in paragraph #7)

(9.) on the day of my attack a MAJOR ms. Prentice had told me that defendants Lyle and Pina told her how I got my ass kicked by my cellmate and didn't fight back. that defendants Lyle and Pina didn't have to worry about getting disciplined because I wasn't allowed I wasn't allowed to utilize the grievance system per her caseworker supervisor teri Kennedy and other staffs. after a MAJOR ms. Prentice overheard a inmate tell me to grieve the defendants conduct. MAJOR ms. Prentice stated Hoskins isn't allowed to receive grievance forms nor was allowed to utilize the grievance system and if a grievance was found in my possession or personal property she was gonna frame me with a shank. (10.) on March 23, 2015 during the 3 to 11 shift warden R. Pfister stated to me that defendants Lyle, Pina and Rosenberger told him how they allowed my cellmate to attack me. that defendants Lyle, Pina and Rosenberger didn't have to worry about being grieved and disciplined because I wasn't allowed to receive grievance forms nor utilize the grievance system which defendant Olson had told him he had already told me that. warden R. Pfister told me that staffs was putting me on mail watch to intercept any complaints that I sent to governors, Directors, Administrative review board and investigation units over I.D.O.C. Regarding the defendants Lyle, Pina, Rosenberger and Olson conduct. warden R. Pfister stated to me that they had been intercepting and destroying all my outgoing letters that was addressed Regarding my safety issues and their conduct of refusing to have me removed out of the cell away from my attacker prior to my attack.

(10.) defendant Olson put a false Disciplinary report against me on march 20th 2015 charging me with 301 fighting A rule violation and stated that I admitted to fighting and had wrote other false Information in the Disciplinary Report that would substantiate a fighting charge whether true or false. on April 3, 2015 I appeared in front of the Adjustment committee during the morning shift. Officer A. Salinas & lieutenant Gufrench heard the false ticket (Disciplinary Report) Officer A. Salinas stated to me that he was aware that the 3/20/15 Disciplinary Report (ticket) that defendant Olson had put against me was false. that defendants Rosenberger, Pina and Lyle told him that my cellmate had kicked my ass (assaulted me) and I didn't defend myself by fighting back. that defendant Olson wanted him to find me guilty of the false Disciplinary Report. Officer A. Salinas stated that thats what his intentions was to do anyway due to the grievances that I wrote on him other staffs and due to me having a officer assault in my disciplinary history. lieutenant Gufrench had stated yeah we know you are the victim that your cellmate assaulted you, you didn't fight back at all but we finding you guilty and we gonna state you pleaded guilty to fighting your cellmate. Officer A. Salinas stated he wasn't worried about me writing any grievances or any other complaints on him because caseworker supervisor teri Kennedy, their institution wardens Pfister, Pierce, Mohler and Administrative review board (A.R.B.) member Sarah Johnson was by their side that Sarah Johnson was gonna return or distroy all written complaints that I sent to the Administrative review board or grievances they doubt that I had received to the A.R.B. trying to appeal their decision they made in the 3/20/15 false Disciplinary Report. that their mail room staffs had already

-4-

knew to intercept my grievances, disciplinary reports, and to not write him and officer A.Salinas didn't have to worry about me texting to appeal their Adjustment committee finding through the grievance system, because I wasn't allowed to utilize their grievance system anymore. (11.) On april 7th 2015 during the morning at the pontiac correctional center ("I.D.o.C") while being in the Health care unit (H.c.u.) holding cage. Officer Ms. Elders observed me in the holding cage. She stopped and stated to me that she was assigned to the pontiac correctional center ("I.D.o.C.") mailroom due to her being on light duty since she was pregnant which I had saw. She stated that she was told by wardens Pfister, Pierce, Mottelee, Superintendent M.Melvin, majors Prentice, Stull, Wheat, Blackard, Posey, Hudsall, McClure, other majors, internal affairs lieutenant K.Davidson, internal affairs officers J.Attig, Webber, Olson, intelligence unit officer Pierce, caseworker supervisor Teri Kennedy and others had told her (Elders) and other mailroom staffs to unseal all sealed mail that was sent out by me through their institution mailroom that was addressed to lawyers, and to the Administrative Review Board (A.R.B.) that if any of my written letters/complaints was regarding staffs conduct of allowing me to get attacked on 3/20/15 and about not being allowed to utilize the grievance system, for all mailroom staffs to destroy those written complaints or to forward them directly to the wardens, caseworker supervisor Teri Kennedy, internal affairs, intelligence unit or to major Ms. Prentice, including all written letters that I sent out to the Illinois Department of Corrections ("I.D.o.C.") Directors, governors, investigation units, illinois state police and attorney generals office. Officer Elder made mention of what she knew about the 3/20/15 incident (my attack) knew it was gonna occur before it did knew about all the written safety concern kites that I sent to all institution staffs putting them on alert that my attack was gonna occur before it happened. Officer Ms. Elders stated that I should have expected for staffs to allow me to get attacked due to how staffs felt about me. Ms. Elders had further stated to me that intelligence unit officer Pierce, internal affairs lieutenant K.Davidson, officers Attig, Olsen and Webber from the internal affairs Department and other staffs had intercepted alot of complaints that I had sent to the Illinois Department of Corrections ("I.D.o.C.") Directors, governors, investigation unit, attorney general offices and illinois state police offices complaining to those Departments about pontiac correctional center ("I.D.o.C.") staffs conduct toward me. That all those written letters was exposed to all the pontiac correctional center ("I.D.o.C.") staffs. Then was distroyed. (12.) On April 14th 2015 while being in the administration building at the pontiac correctional center ("I.D.o.C.") Assistant warden Guy D.Pierce, caseworker supervisor Teri Kennedy, Chief investigator Troy Morse and internal affairs lieutenant K.Davidson all had observed me sitting on the bench each of them teased and provoke me about being attacked by my cellmate on 3/20/15 and not fighting back, that they had informed all the pontiac correctional center staffs that I was not allowed to receive grievance forms, utilize the grievance system, that defendants Olson, Rosenberger, Lyle and Pina didn't have to worry about being grieved due to them allowing me to get attacked by my cellmate nor disciplined. That they all was putting me on mail watch, that any letters I mailed out addressed to Attorneys, Attorney generals offices, I.D.o.C. Directors, governors, Administrative Reviewboard (A.R.B.) and investigation units would have been unsealed reviewed and if my letters was regarding staffs conduct of allowing me to get assaulted on 3/20/15 by my cellmate and about being denied grievance forms, not being able to utilize the grievance system like the last ones (complaints I sent out) they was gonna be distroyed. Assistant warden (Guy) Pierce, lieutenant K.Davidson, Teri Kennedy head counselor supervisor, and chief investigator Troy Morse all had stated since I had written grievances on staffs, other complaints as well against staffs and due to me having a officer assault in my disciplinary history they was happy I got assaulted by my cellmate, was glad defendants Lyle, Pina and Rosenberger allowed my cellmate to attack me and they was all gonna makesure non of the defendants got grieved and disciplined was gonna do what they could have done to makesure the defendants was not and never disciplined. (13.) as a Result of the false ticket defendant Olson put against me. I was found guilty of the false Disciplinary report (ticket) and had to serve a extra 30 days in segregation confinement with the Disciplinary report (ticket) being placed in my Disciplinary History that raised my aggression level and would at all times be used against me if any other false Disciplinary reports was put against me during any Disciplinary committee and Administrative Dentention hearings to determine if I deserve to be placed in segregation or Administrative Detention. (14.) On March 20th 2015 after my cellmate attacked me, I sustained numerous of head injuries cuts, swellings knots, in the back and on the side of my head a cut underneath my lip a laceration above my right eye 2 inches or more longer that bled to death. Torn tissue inside and in the back of my right eye. Still to this day Im having pains in my head, I get dizzy, head shakes, underneath my lip (bottom lip) gets num shakes, hurts, above my right eye hurts, burns, stings, jumps (nerve damage) gets num when I attempt to exercise my eye hurts, burns, stings, jumps, shakes my head where the injuries was at hurts. I get dizzy when I lay on the right side of my face and wash the right side of my face above my right eye where I sustained a laceration at it burns, hurts stings get red and num nerves jump constantly loses eye brows my eye brows dont grow numore where I sustained the laceration at. Still to this day im in the process of awaiting to have laser surgery in my right eye to replace the torn tissue. I barely could see build under it which Im in the process of awaiting to have laser surgery in my right eye has caused fluid to out of my right eye my vision gets blurr that prevents me from seeing out of my right eye to walk, read and write fluid always running out of my right eye I get headaches dizzyness. It's a miracle that I was able to struggle to use 1 eye to complete (draft) this complaint. I was denied medical treatment/eye doctor treatment while being housed at the pontiac correctional center (I.D.o.C.) it took me 3 1/2 months after being housed at menard correctional center ("I.D.o.C.") to be seen by a eye doctor. Once I was seen the eye doctor Lisa Hager found that the 3/20/15 injury to my eye caused torn tissue inside and in the back of my right eye found fluid to be building up under the torn tissue and ordered that I receive laser surgery in my right eye to replace the torn tissue. Im still to this day suffering while Im awaiting to receive the laser surgery in my right eye. When I drink cold water, soda, milk and juice it causes pain into my right eye above my right eye when the temperature (temperature) is cold as well. When it's hot and when the sun hits my right eye it irritates my right eye make fluid run out it burns prevent me from opening my right eye where the laceration occurred at. Above my right eye burns and stings when the sun hits it and when the temperature gets hot. Still to this day I cry, worry, is nervous, depressed, can't sleep, focus, function, everytime I think about what happened to me on 3/20/15. Hoping that it wouldn't be a next, that I would have to suffer a attack again I can't eat how I normally did prior to my attack. I lost and losing alot of body weight.   -9-

## Relief Requested

I wish to be rewarded monetary compensation in the amount of $289,999. in compensatory damages and $189,999. in punitive damages from each defendant. Im requesting that the defendants pay all court and attorney fees. each damages will cover for my mental anguish/mental emotional distress, pain sufferings and all other sufferings that I suffered thats stated in the complaint, that was caused by each defendant conduct. Still to this day I remain traumatized, worried and have other feelings and effects that I experience due to what I suffered thats stated in this complaint. each monetary compensation, compensatory and punitive thats requested would cover for also for plaintiff ongoing sufferings.

Plaintiff request a trial by Jury

Date: September 18th 2015

Respectfully submitted
Joshua Hoskins
ID# R54570
Menard Correctional Center
P.O. box 1000
Menard Il 62259